Filed 3/8/22  Zech v. Richards CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| EUGENE V. ZECH, | |
| Plaintiff and Respondent, | G057798 consol. w/ G058460 |
| v. | (Super. Ct. No. 30-2018-00965825) |
| ALICIA MARIE RICHARDS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.  Request for judicial notice granted in part and denied in part.

Alicia Marie Richards in pro. per.

Law Office of Eugene V. Zech and Eugene V. Zech for Plaintiff and Respondent.

Eugene V. Zech filed a lawsuit against his former client, Alicia Marie Richards, to recover sums due for legal representation in her marital dissolution action. After a three-day trial, the jury found in Zech's favor and awarded $70,263.40 (attorney fees, costs, and prejudgment interest).

On appeal, Richards asserts the judgment must be reversed for the following reasons: (1) the trial court lacked subject matter jurisdiction; (2) the court abused its discretion by not permitting Richards to file a cross-complaint; (3) the court erred by granting Zech's motion in limine to exclude evidence; (4) the verdict is not supported by substantial evidence; and (5) the court improperly instructed the jury. We conclude these contentions lack merit, and we affirm the judgment.

FACTS

I. *Retainer Agreement*

In June 2016, Richards retained Zech to represent her in a pending marital dissolution action. She executed a retainer agreement (Agreement) stating Zech's services would cost $400 per hour. However, the Agreement specified Richards did not have to pay an initial retainer fee. Instead, she was required to execute a family law attorney real property lien as security for Zech's fees. Zech claimed he agreed to this arrangement because Richards's stepfather was a friend who asked him for a favor. Richards's stepfather told Zech that Richards was unsatisfied with her current family law attorney and she did not have money for a retainer, but she owned a house having substantial equity in Newport Beach. Richards signed the lien in August 2016.

II. *Marital Dissolution Judgment & Postjudgment Appeals*

On June 16, 2017, the trial court entered a stipulated judgment in the marital dissolution action. Circumstances surrounding the parties' stipulation agreement and the judgment are described in greater detail in our opinions addressing Richards's numerous appeals arising from her postjudgment legal machinations, delaying execution of the judgment for over three years.

2

In Richards's first appeal (*In re Marriage of Richards* (Jan. 9, 2020, G055927) [nonpub. opn.] (*Richards I*)), we rejected her assertion the court erred by refusing to set aside a stipulated marital dissolution judgment ordering sale of the family residence (the Property) if she did not timely buy out her ex-Husband's share. The second appeal concerned two postjudgment orders. (*In re Marriage of Richards* (Jan. 9, 2020, G056626) [nonpub. opn.] (*Richards II*).) In *In re Marriage of Richards* (May 18, 2020, G056921) [nonpub. opn.] (*Richards III*), we consolidated two appeals and affirmed the trial court's rulings on two postjudgment orders dated October 9, 2018 (G056921) and November 9, 2018 (G057041). Both orders related to the court's efforts to enforce the judgment as follows: (1) ordering Richards to sign a listing agreement with a real estate agent to sell the Property; (2) sanctioning Richards when she refused to comply and ordering the court clerk to execute the necessary documents; (3) granting Richards's ex-husband exclusive possession of the Property; (4) ordering Richards to vacate the premises within 60 days; and (5) inviting her ex-husband to file a writ of possession if Richards failed to comply with the court's order to leave the residence.

While *Richards III* was pending, Richards continued to litigate the same issues in the family law court and made several attempts to vacate the enforcement orders. Her next appeal concerned three 2019 orders denying her motions to quash/vacate her ex-husband's writ of possession. We affirmed the rulings in (*In re Marriage of Richards* (Oct. 6, 2020, G057803) [nonpub. opn.] (*Richards IV*).

While litigating the marital dissolution action, Richards also initiated proceedings in the probate court. We considered Richards's appeal in *Lavacot v. Richards* (Mar. 30, 2020, G056745) [nonpub. opn.] (*Lavacot*), which concerned Richards's efforts to obtain additional money from her great-grandparents' trust. These probate proceedings are tangentially relevant to the case before us now because Zech prepared a release for Richards's father to sign and submit to the probate court. Richards intended to use her father's inheritance and additional trust funds to buy out her ex-

3

husband's share of the Property (as agreed upon in the marital dissolution settlement/stipulated judgment). As discussed in *Lavacot,* all did not proceed as planned. The probate court would not expedite matters and denied Richards's application to remove the trustee, suspend his powers, or free the trust assets. Zech billed Richards separately for services related to the probate case (bills dated December 5, 2016 through November 1, 2017) and submitted these documents as trial exhibit No. 4.

A. *Negotiations with Zech*

Zech claims that after the parties reached a settlement agreement in the marital dissolution action, he offered to reduce Richards's bill. He explained the bill was over $62,000, and he offered to accept "$30,000 by July 7th of 2017, and . . . an additional $10,000 when she received monies from a trust that she was looking to receive down the road a little bit[.]" He selected that particular date in July because the dissolution judgment specified Richards was required to either refinance or sell the house by July 7. Zech explained, "So my offer was made contingent upon the fact that the money would be available either through the loan escrow that was pending . . . or the house would be put on the market and sold, and that I would be paid those monies on one of those two days." However, this arrangement failed because the house was not sold or refinanced. Instead, Richards filed a motion to set aside the judgment and, as described in the previous section, used every legal tactic available to delay execution of the judgment.

Zech claimed he later offered to reduce his bill to $44,157. Richards would not pay him any money. He eventually stopped representing Richards, and he executed a substitution of attorney form at the end of July 2017. Richards proceeded as a self-represented litigant. In November 2017, Zech learned Richards received money from a trust and claimed he again asked Richards to pay her attorney fee bill. She refused.

4

B. *The Lawsuit*

In January 2018, Zech filed a collection action against Richards seeking $70,263.40. The following month, Richards filed an answer raising 36 affirmative defenses. One of her affirmative defenses asserted Zech was asking for more money than what the parties had agreed to. She also maintained the transaction "resulted from fraud, deceit, or misrepresentation" and Zech was not entitled to attorney fees because he breached his fiduciary duty. In another affirmative defense, Richards wrote Zech was "barred from any relief, based on . . . state and local laws and malpractice."

Before trial, Richards failed to respond to discovery until after Zech filed a motion to compel. The court denied her ex parte application objecting to the court's subject matter jurisdiction based on the theory Zech's lawsuit belonged in the family law court. This court summarily denied her petition for a writ of mandate seeking review of this ruling. (*Richards v. Superior Court* (Feb. 7, 2019, G057316 [nonpub. ord.].)

The court also denied Richards's ex parte application for leave to file a cross-complaint for legal malpractice, as well as her ex parte application to vacate or continue the trial date and reopen discovery. The court denied her ex parte application to shorten time to enforce a trial subpoena regarding records. The court considered and denied eight requests for judicial notice. Over Richards's objection, the court granted Zech's motion in limine to exclude evidence of malpractice litigation. The court also denied Richards's request for a statement of decision regarding a motion in limine.

The jury heard several days of testimony from Richards, Zech, and his legal assistant, Kim Arellano. Zech testified that during the dissolution proceedings he sent Richards monthly billing statements outlining various litigation costs as well as his attorney fees. He sent bills from July 2016 until the last date of representation in July or August of 2017. Zech submitted copies of all these bills (exhibit No. 3) and billings from services performed in the probate action (exhibit No. 4). Zech claimed he spent 190.6 hours on the case but reduced his bill by not charging for 30 hours of work. Richards

5

denied receiving some of the bills and did not review the ones she did receive. Arellano testified none of the bills were returned to the law office, and there was no issue they were delivered to the wrong address.

Although both parties signed the Agreement, Richards testified she had never seen it before. Her primary defense at trial was there was no contract. Alternatively, she claimed Zech was barred from recovering fees due to evidence of malpractice and because he breached his fiduciary duty. She complained the bills were too high.

The jury returned a verdict in Zech's favor. Richards filed a lengthy request (208 pages) for a statement of decision and objected to the proposed judgment. The court denied the request for a statement of decision and stated in its order the following: "A [s]tatement of [d]ecision is neither necessary nor appropriate in this case. [Code of Civil Procedure] section 662, cited by the defendant, bears the caption "[c]ause tried by court," which indicates its inapplicability to this case, which was a jury trial." [1] It denied the objection to the proposed judgment and gave Richards the following warning: "The [o]bjection to [proposed] [j]udgment filed by defendant Richards on March 1, 2019 has no merit and reflects substantial misunderstanding of the law. The [c]ourt will therefore take no action in response thereto (other than this minute order.) [¶] In the future, if the defendant continues to file unmeritorious papers, the [c]ourt may not respond in any fashion. That should not be interpreted as consent or agreement with any requests or comments contained therein." Thereafter, Richards filed an objection to the "[c]ourt's refusal to provide a statement of decision" and to the second and third proposed judgments. As promised, the [c]ourt did not rule on these objections. The court entered a final judgment on April 24, 2019, and Richards filed this appeal.

_____

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

6

## DISCUSSION

I. *Subject Matter Jurisdiction*

Richards maintains the judgment is void because the court lacked subject matter jurisdiction over the fee dispute. She also contends the court should have granted her pretrial motion to dismiss. We disagree.

On the original trial date, Richards filed a motion to dismiss the lawsuit on the grounds the court lacked jurisdiction pursuant to section 916. Alternatively, she asked the court to stay the proceedings pending the appeal in her marital dissolution action. Both allegations appeared to be based on the unique and convoluted theory her ex-husband was solely responsible for paying Zech's fees as part of her dissolution case. The trial court delayed ruling on the dismissal motion and rescheduled the trial. On the first day of trial, Richards asked the court to rule on her motion. The court denied the motion but did not directly address Richards's section 916 argument.

On appeal, Richards does not discuss section 916. Her lack of subject matter argument is confusing. It appears to be based on the mistaken belief the family law court assigned to her dissolution case also had exclusive jurisdiction over Zech's attorney fee dispute. This theory is based on the misconceived notion Zech *could be* a party in the dissolution action, as well as case law holding a family law court has the exclusive jurisdiction to determine the reasonableness of the fees an ex-spouse should pay. Richards also theorizes her appeal in the marital dissolution action automatically stayed all tangentially-related attorney fee claims, including separate lawsuits filed in civil courts. She boldly accuses Zech of trying to "venue shop" because he knew his fee dispute was pending in the family law action.

A. *Applicable Legal Authority*

"'"The principle of 'subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it." [Citation.] Thus, in the absence of subject matter jurisdiction, a trial court has no power "to hear or

determine [the] case.'" [Citations.]" (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 324.) "And any judgment or order rendered by a court lacking subject matter jurisdiction is 'void on its face . . . .' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 (*Varian*).)

Section 916 imposes an automatic stay on certain trial court proceedings pending appeal. "Under section 916, 'the trial court is divested of' subject matter jurisdiction over any matter embraced in or affected by the appeal during the pendency of that appeal. [Citation.] 'The effect of the appeal is to remove the subject matter of the order from the jurisdiction of the lower court . . . .' [Citation.]" (*Varian, supra,* 35 Cal.4th at pp. 196-197.)

B. *Request for Judicial Notice On Appeal*

In raising this jurisdiction argument, Richards recognizes she refers to documents filed in her dissolution action that are not part of our appellate record. She filed a request for judicial notice of five exhibits, including "Zech's [r]equest" for attorney fees under Family Code sections 2130 through 2132. Thus, before turning to the merits of her argument, we will first consider the request for judicial notice.

Zech opposed the judicial notice request, asserting it was Richards's end run around the rules limiting the word count for appeals. Richards's opening brief nearly reached the maximum number of words (13,973 of the 14,000 allowed) pursuant to California Rules of Court, rule 8.204. Her request inappropriately sought judicial notice of two unpublished California cases and two statutes, and the motion squeezed in an additional 4,000 more words of legal analysis. We agree the request was frivolous because Richards did not seek judicial notice before discussing over 40 published opinions, 13 statutes, two treatises, and three California Rules of Court in her opening brief. One cannot avoid the word limit rules by filing superfluous motions. We deny Richards's request to take judicial notice of established and published legal authority (Exhibit Nos. 1, 2, 4, & 5).

8

Zech argues we should not take judicial notice of exhibit No. 3, relating to an attorney fee motion filed in the dissolution action because the trial court did not consider it. He asserts that if Richards had attempted to introduce this evidence before trial, he would have objected on the grounds the motion became moot when the parties (Richards and her ex-husband) entered into a stipulated judgment and agreed to bear their own costs and attorney fees. Zech claims that if given the opportunity, he could have directly refuted Richards's contention there was a "pending" request for attorney fees in the family law court.

We have authority to grant judicial notice of court documents filed in other cases. (Evid. Code, § 452, subd. (d).) We will grant Richards's request for judicial notice of exhibit No. 3, but it does not help her case. To the contrary, the document directly refutes Richards's assertion in this appeal that Zech submitted his *current* fee dispute to the family law court's exclusive jurisdiction. Exhibit No. 3 is a copy of Zech's declaration filed "in support of" his client's request for attorney fees and costs. Thus, contrary to Richards's contention, Zech did not personally file a motion requesting attorney fees in the dissolution case—he filed the declaration in his role as Richards's counsel.[2] Moreover, we see that Zech's declaration was filed on March 2, 2017, which predated the parties stipulated marital agreement (dated June 2017). The motion seeking payment of Richards's fees from her ex-spouse became moot when she signed the settlement agreement specifying the parties shall pay their own attorney fees and costs in the dissolution action.

---

[2] In her briefing, Richards suggests attorneys representing spouses in a dissolution action automatically become a party to the action subject to the exclusive jurisdiction of the family law court. She also argues Zech should have filed a motion to be joined in the family law action to recover his fees because he had a duty to "exhaust the family law court remedies." These arguments contradict each other and are not supported by legal authority. (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3 [reviewing court may disregard contentions unsupported by legal or factual analysis].)

9

C. *Analysis*

Turning to the merits of the appeal, Richards's first argument relates to her theory a family law court has exclusive jurisdiction over all attorney fee disputes. She asserts only the family law court has authority "to make all determinations regarding the reasonableness of Zech's attorney fees allegedly incurred representing Richards and whether those fees should be paid by Richards's spouse or [by] ordering a payment plan for Richards because there was no way Richards could pay those fees and they were unreasonable in amount, inflated, and the fact that he failed to properly represent Richards in her dissolution and provided no support to prove he actually worked on Richards's case on all times specified in his billing . . . ."

It is true that a family law court has jurisdiction to review attorney fees in the context of considering one spouse's petition to have the other spouse pay those fees. However, this case concerns a basic contract dispute between an attorney and his former client. Stated another way, Zech stopped representing Richards long ago and he was under no obligation to continue litigating Richards's disputes with her ex-husband or try to collect earned fees from anyone other than Richards.

Richards's repeated assertion family law attorneys are required to litigate fee disputes in the family law court demonstrates her fundamental misunderstanding of the proper parties in a marital dissolution action. A spouse's fee request does not bind that spouse's family law attorney to litigate his/her claims in the family law court. Richards relies on inapt case authority holding family law courts should consider contracts *between the spouses* as part of the dissolution proceedings. (See *In re Marriage of Gagne* (1990) 225 Cal.App.3d 277 [family law court had jurisdiction to enforce oral premarital loan agreement regarding family residence purchase].) In preparing her briefing, Richards somehow failed to see the thousands of appellate court opinions reviewing civil actions filed by attorneys to recover unpaid fees and costs, including attorneys hired to represent parties who failed to pay their bills for services in dissolution

10

actions. The trial court correctly determined it had jurisdiction to consider Zech's lawsuit alleging his former client breached her contract to pay for legal services.

We turn next to Richards's assertion Zech's collection action was automatically stayed, limiting the court's authority to hold a trial. Although Richards referred to section 916 in her pretrial motion to dismiss, her appellate briefing does not make any mention of this statutory provision. Rather, it appears Richards is promoting a new "stay" theory on appeal. She argues Zech's claim for attorney fees was erroneously based on his theory the civil court could enforce the stipulation entered in the dissolution action (when Richards stipulated that she was responsible to pay her own attorney fees). She concludes that because the civil court could not enforce the dissolution stipulation while it was being challenged on appeal, Zech's claim should have been dismissed. There are lot of layers to unpack here.

We begin by examining Richards's supporting legal authority. She cites to section 580, which sets forth the maximum amount recoverable when there is a default judgment. She suggests this civil court lacked authority to *enter a default judgment* in the marital dissolution action. She adds default was improper because she filed an answer to her ex-husband's complaint. This argument is absurd. To begin with, Richards is asking this court to reverse a ruling the trial court did not make. There was no default judgment in this case. By all accounts a jury considered the evidence presented in Zech's lawsuit against Richards, *the jury returned a verdict in his favor*, and the court entered judgment accordingly. Richards also forgets that the trial court was never asked to consider this new section 580 argument when ruling on the dismissal motion (which cited to section 916). In light of all of the above, we have no grounds to disturb the trial court's decision to deny the dismissal motion after rejecting Richards's meritless subject matter jurisdiction argument.

11

II. *Cross-Complaint*

Richards argues the court erred by denying her ex parte application for leave to file a cross-complaint, alleging Zech was liable for attorney malpractice and other related claims. We disagree. Section 426.50 required proof Richards's failure to timely file a cross-complaint was a mistake and the motion was filed "in good faith." Richards failed to meet her burden of showing why the court's ruling was an abuse of discretion.

Before discussing the merits, it is useful to review the circumstances surrounding the court's ruling in more detail. Zech filed his lawsuit on January 9, 2018, and Richards filed her answer soon thereafter on January 26, 2018. She included allegations of attorney malpractice as affirmative defenses. The matter was scheduled for trial approximately nine months later (October 22, 2018). However, one month prior to the trial date Richards filed a series of ex parte applications. The first one, filed on September 12, 2018, sought continuance of the trial date. After the court denied this ex parte application, Richards filed a second application, on September 24, 2018, asking for leave to file a cross-complaint against Zech.

The proposed cross-complaint alleged causes of action for legal malpractice, breach of written and oral contracts, breach of fiduciary duty, and "[f]raud in the [i]nducement." In her ex parte application, Richards cited section 426.50. She explained she was seeking leave to file the cross-complaint because she was not an attorney and had been (1) "inundated [with work in] the family law court" to protect her property, (2) litigating an appeal in that case, and (3) defending herself in Zech's collection action. She also claimed to have relied on the advice of "an attorney," who said she would have to file a separate malpractice lawsuit. Richards asserted that when she learned about the need to file a cross-complaint she "tried to retain an attorney to help her but because of the cost and being so close to trial, she was unable to find someone."

12

Zech opposed the ex parte application, noting that section 426.50 requires not only proof Richards's failure to timely file a cross-complaint was through her "oversight, inadvertence, mistake, neglect, or other cause" but also demonstrate she acted "in good faith." (Bold & Italics omitted.) He asserted Richards did not discuss the good faith element in her moving papers and there was evidence to the contrary. He maintained the record showed Richards was well aware of the malpractice claim when she filed her answer, and it was highlighted in many of her discovery responses. He noted Richards also discussed Zech's alleged malpractice during her litigation efforts in the dissolution action.[3] Zech concluded Richards's assertion she mistakenly overlooked a claim was not credible. He opined the ex parte application was "nothing more than [Richards's] knee-jerk reaction to having her prior ex parte application . . . for a continuance being denied." He believed it was a stall tactic.

The court denied the ex parte application. There is no reporter's transcript of the proceedings. The minute order does not include reasons for the court's ruling. Nevertheless, Richards argues the *only* reason the court denied her ex parte application was because of a procedural defect, i.e., the court determined Richards was required to file a fully noticed motion. Richards maintains there was no evidence to support Zech's assertion the court determined she acted in bad faith. The obvious problem with this argument is that nothing in the record supports it. Richards cannot cite to any record references to support her claim.

As pointed out by Zech, the record merely shows Richards objected to the notice of ruling he prepared, asserting it did not reflect the court's full ruling that Richards needed to file a fully noticed motion to file a cross-complaint. Zech filed an amended notice of ruling, merely adding the court reviewed the pleadings and arguments raised by the parties. Richards again objected, arguing the ruling needed to indicate the

_____

[3]         Zech submitted a copy of Richards's motion to vacate the dissolution judgment (filed April 10, 2018), which discussed Zech's alleged malpractice.

13

court told her to file a noticed motion. We agree with Zech that none of this proves the court denied the motion for the reasons offered by Richards.

It is also telling that Richards did not attempt to file a noticed motion for leave to file a proposed cross-complaint. As aptly noted by Zech, if Richards truly wanted to pursue these claims, she could have tried to file an ex parte application for an order shortening time to file the motion to amend. She did not. Instead, the next document she filed was yet another ex parte application related to a discovery dispute. Specifically, Richards sought an order shortening time to hear a motion to enforce a trial subpoena regarding records. Given this procedural history, it is understandable why Zech claims Richards filed the ex parte applications (as well as other motions and requests) to postpone the trial.

In any event, if we assume for the sake of argument that the court denied the motion for leave to file a cross-complaint on procedural grounds (lack of a noticed motion), Richards waived this issue by failing to explain why the court was wrong. Instead of discussing this procedural question, Richards surprisingly refers to case authority discussing evidence required for the court to determine there was bad faith (a finding she claims the trial court did not make). (Citing *Silver Organizations Ltd. v. Frank* (1990) 217 Cal.App.3d 94, 99 (*Silver*) ["*substantial evidence* must support the trial court's decision" defendant filed motion for leave to file cross-complaint in bad faith].)

The court in *Silver* was not asked to consider whether a party can make an ex parte request for leave to file a cross-complaint. In that case, the defendants filed a noticed motion. There is an additional reason why the *Silver* case does not assist Richards. The court stated, "Where, as here, the trial court has not provided a reason for its denial of a motion to file a compulsory cross-complaint, *we imply* its denial is based on a finding that the moving party had not acted in good faith. [Citation.]" (*Silver, supra,* 217 Cal.App.3d at p. 100, italics added.)

14

Similarly, in our case the court did not provide a reason for denying Richards's request, and therefore, we imply the ruling was based on a finding of bad faith. Once again, Richards's misreading of the applicable legal authority renders her contention on appeal meritless.

III. *Request to Continue and Reopen Discovery*

Richards filed an ex parte application to continue the trial and reopen discovery. She raised five separate contentions in the application, however, on appeal she limited her argument to the issues of incomplete discovery and how she was unable to fully present her case. Specifically, Richards believes that if she had been given more time to conduct discovery, and if the court had forced Zech to provide additional proof of his costs, she could have conclusively proven Zech's bills were "padded." She speculates Zech's padding could be uncovered if she had access to his telephone company records and information from the office building landlord.

This argument could have been raised during the time set aside before trial for discovery. However, Richards's brief does not elaborate on this point, and in arguing the court should have *reopened* discovery, Richards omits any reference to the applicable rules or our standard of review. (See § 2024.050, subds. (a) & (b)(1), (b)(2) [listing requirements for motion to reopen discovery and factors court must consider in exercising discretion to grant or deny motion].) Thus, Richards waived this issue by failing to provide applicable legal analysis or citations to relevant legal authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

IV. *Substantial Evidence to Support the Verdict*

Richards asserts there was insufficient evidence to support the verdict because she did not breach the Agreement. Although difficult to decipher, we gather she

15

has three main complaints with respect to the verdict. We will address each one separately below.

First, Richards asserts she did not fully understand "the extent of Zech's malpractice" until after she filed appellate briefing in the dissolution action. She maintains that if her malpractice counter claims could have been heard by the jury the verdict would have been different. This argument is essentially a repackaging of her claim the court erred by denying her motion for leave to file a cross-complaint alleging malpractice. We have already considered and rejected this issue and incorporate that analysis here. Moreover, the jury was instructed on her affirmative defenses, which included attorney malpractice. We have no reason to doubt the jury considered these instructions and rejected the proposed affirmative defenses, as evidenced by its verdict in Zech's favor.

Second, Richards maintains Zech failed to prove all the elements of breach of contract and his common counts/open book account. She maintains the jurors "erred by rendering a verdict that [she] breached the contract because the retainer speaks for itself and nowhere in it did it require [her] to pay . . . ." She notes Zech admitted he did not ask Richards to pay any money beforehand, explaining he would have a lien on her marital property. She points to a paragraph in the Agreement providing she was not required to maintain a credit balance to be "used against current billing." She argues that because the Agreement did not specify a deadline for payment and the typical "30-day billing cycle was not applicable" she was not required to pay for services. Richards adds that Zech knew she had no money and he did not expect her to pay until her dissolution action was resolved. In other words, Richards asks us to overturn the jury's verdict on the theory she expected Zech to work indefinitely and for free. Apparently, Richards did not think we (or the jury) would read the Agreement or consider the evidence Zech presented at trial.

16

Paragraph H of the Agreement stated Zech has the right to withdraw as counsel. It clearly provided that if Zech withdrew, "[c]lient agrees to immediately pay [a]ttorney any outstanding balance due. In addition to [a]ttorney[] fees, [c]lient shall also pay to [a]ttorney any and all costs advanced." Zech never agreed to provide pro bono representation.

More importantly, "when a losing party challenges the verdict for a lack of substantial evidence, they 'must set forth, discuss, and analyze all the evidence on that point, *both favorable and unfavorable*. [Citation.]' (Italics added.) [Citation.] Appellants' 'fundamental obligation to this court, and a prerequisite to our consideration of their challenge' [citation], is to 'set forth the version of events *most favorable to* [*respondent*]' [citation]. . . . '"Unless this is done the error is deemed to be waived."' [Citation.]" (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246 (*Pope*).) Richards's opening brief contains only a self-serving monolog of evidence she believes fully supports her theory she was not required to pay Zech. Because Richards failed to set forth all the material evidence and urges reversal solely on her own evidence, we deem this issue waived.

Third, Richards maintains the jury erred in its interpretation of CACI No. 372. This instruction related to Zech's claim Richards owed him money on an open book account. The court instructed that to establish this cause of action Zech must prove the following: (1) he and Richards "had financial transaction(s)"; (2) that Zech "kept an account of the debits and credits involved in the transaction(s)"; (3) Richards owes Zech "money on the account"; and (4) the amount owed.

Richards focuses on the phrase "debits and credits," and argues there was insufficient proof of this element because she never made a payment, i.e., there was evidence of a debit but not a "credit." To support this theory, Richards cites to a case that explains, "A book account is described as 'open' when the debtor has made some payment on the account, leaving a balance due. [Citation.]" (*Interstate Group*

17

*Administrators, Inc. v. Cravens, Dargan & Co.* (1985) 174 Cal.App.3d 700, 708 (*Interstate Group*).)

She misunderstands the required elements of this cause of action. As explained in *Interstate Group* (a case Richards cites), "the most important characteristic of a suit brought to recover a sum owing on a book account is that the amount owed is determined by computing *all* of the credits and debits entered in the book account. Accordingly, when a complaint alleges a common count to recover for a sum due on a book account, and, as occurred here, the complaint is answered by a general denial, this places in issue every entry in the book account. The defendant is therefore entitled to attack each of the entries 'to show that the plaintiff has no right to recover or to recover to the extent that he claims.' [Citations.]" (*Interstate Group, supra,* 174 Cal.App.3d at p. 708.) A book account is defined by statute to mean simply "a detailed statement which constitutes the principal record" of all transactions between the parties. (§ 337a.)

The phrase "debits and credits" is a descriptive term of the type of detailed record that qualifies as a book account. It is not a requirement. We found no authority, and Richards cites to none, holding a detailed statement of transactions between the parties, showing the amount owed, cannot be the basis for a cause of action without evidence there was at least one credit denoted in the book account.

V. *Evidentiary Rulings*

Richards contends the court erred by refusing to enter into evidence an "Excel table" (the spreadsheet). She did not disclose this document during discovery and it was not on her list of exhibits. She claimed to have forgotten about it but found the spreadsheet sometime during the trial. On appeal, Richards asserts the spreadsheet was credible evidence that would have proved Zech overcharged her on his first invoice. Richards maintains she had "no reason to create a spreadsheet back in 2016 date stamped over two years previous without any changes made to it and for it not to be considered was an abuse of [the] court's direction." In essence, she appears to be arguing the

18

document was authentic and material to the primary issue in the case, and therefore, the court was required to accept it into evidence.

This argument ignores the reasons the court gave for excluding the untimely produced spreadsheet. Richards has waived this evidentiary challenge by failing to present reasoned legal argument and relevant case authority regarding circumstances when a party may introduce newly discovered evidence in the middle of a trial. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785 [appellant must provide reasoned legal argument].) What if the court had permitted Zech to surprise Richards during the trial with evidence he "forgot to disclose" during discovery? We doubt Richards would have accepted such gamesmanship as providing credible or acceptable evidence.

VI. *Instructional Error*

A. CACI No. 372

Richards maintains the court should have provided different instructions when the jury sought clarification on the meaning of a common count open book account and the third cause of action for common counts. She believes the court's response was inadequate because it simply told the jury to look at CACI No. 372. Not so. As previously stated, CACI No. 372 correctly stated the elements of the common count of an open book account. Contrary to Richards's contention, the trial court was not required to tell the jury the cause of action was inapplicable unless there was also evidence she made a payment or was owed a "credit." Richards misunderstands the required elements for this cause of action. We find no instructional error.

B. *Duty to Repeat CACI Nos. 203 & 205*

Richards argues the court improperly responded to the jury's question (question number three) about whether Zech should have provided additional supporting documents, as requested by Richards, to support the detailed invoices. The court indicated it would answer the jury's question with the statement, "'You must determine whether the parties acted reasonably.'" Richards asserts this decision was made in her

19

absence, and she would have asked the court to instruct on CACI Nos. 203 and 205 [regarding a party's ability to provide evidence and to distrust weaker evidence]. We find no abuse of discretion.

First, the record does not support Richards's claim she was absent when the court formulated its responses to question number three. We reviewed the reporter's transcript, and it indicates Richards was not only present but also objected to the proposed responses to question numbers two and three. The rest of Richards's argument is puzzling because the court instructed on CACI Nos. 203 and 205. As best as we can tell, Richards's contention is that the court's response to the jury's question was incomplete and somehow misleading because it failed to *repeat* CACI Nos. 203 and 205. We review the response to a jury question for abuse of discretion (*People v. Eid* (2010) 187 Cal.App.4th 859, 881-882), and find none in this case.

Like the trial court, we view the jury's question to be about Zech's burden of proof. The jury asked the following question: "Is it reasonable that [Zech] did not provide any additional supporting documents of his expenses, requested from [Richards], i.e., phone bills, courier fees, mileage [and] time to court hearings, etc., in addition to the invoices and account ledgers that were presented?" However, it was up to the jury to determine if Zech's evidence satisfied his burden of proof in proving how much money he was owed. The court correctly understood it could not weigh in on this dispositive issue and say Zech's actions regarding the evidence of damages was either reasonable or unreasonable. We appreciate why Richards wanted the court to advocate for her position, but she apparently has not considered the possible alternative outcome. What if the court sided with Zech by telling the jury Zech acted reasonably?

In conclusion, we found nothing in the record to suggest the jury was confused or mislead by the court's answer to question number three. Moreover, referring the jury to CACI Nos. 203 and 205 could have created confusion. The jury's question

20

did not relate to *how to consider* the missing evidence or weaker evidence. We conclude Richards's contentions on this point lack merit.

In a related argument, Richards asserts the jury failed to properly interpret CACI Nos. 203 [power to produce better evidence], 204 [willful suppression of evidence], and 205 [failure to explain or deny evidence]. She maintains it is undisputed Zech could have provided stronger evidence to prove his invoices were accurate, such as timesheets, phone records, and calendars. She concludes that if the jury had properly followed CACI Nos. 203, 204, and 205, they would have been required to disregard his invoices and find in her favor. We disagree.

These three instructions do not contain commanding language mandating a finding one way or another. For example, CACI No. 203 instructs the jury "may" consider the ability of a party to produce evidence and also that the jury "may distrust the weaker evidence." CACI Nos. 204 and 205 contain similar permissive provisions, implying the jury has some degree of discretion. Thus, the jury could have believed Zech's testimony he did not possess stronger evidence, finding Zech more credible than Richards. We conclude the jury was under no obligation to decide in Richards's favor due to CACI Nos. 203, 204, or 205.

C. *Refusal to Give Proposed Instructions*

Richards argues the court erroneously refused to give the jury multiple instructions that she proposed. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him [or her] which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) "Substantial evidence is 'reasonable, credible evidence of solid value such that a reasonable trier of fact could make the findings challenged . . . .' [Citation.]" (*Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1539.) "In reviewing whether a requested instruction was properly refused, the appellate court views the evidence in the light most favorable to issuing the instruction. [Citation.]" (*John Y. v.*

21

*Chaparral Treatment Center, Inc.* (2002) 101 Cal.App.4th 565, 574.) With these legal principles in mind, we turn to each of Richards's arguments.

i. *CACI No. 302 Contract Formation*

CACI No. 302 describes the essential factual elements to contract formation. The first element required Zech to prove the contract terms "were clear enough so that the parties could understand what each was required to do." (CACI No. 302.) Richards's argument regarding this instruction is two-fold.

First, she asserts the court failed to instruct the jury on CACI No. 302. This statement is incorrect. Our record shows the court gave this instruction.

Second, Richards suggests the instruction was inadequate because if the jury had applied it properly the verdict would have been different. This contention is unusual because it is framed as an instructional error, but in a roundabout way, the argument sounds like a sufficiency of the evidence challenge. The following excerpt from the briefing demonstrates this point: "Had the [c]ourt properly instructed the jury because it was clear that the contract terms were not clear because in one section of the retainer agreement it says that the 30-day billing is not applicable and then in another section it says that Zech will take a lien, and then in another section it states Richards is to pay within 30 days. Zech knew Richards had no money . . . and specifically stated she was not required to pay . . . and then went and said she breached the retainer . . . without notifying Richards . . . for an entire year. . . . The contract was not clear and Zech waived any alleged breach by ignoring it and the jury failed to properly apply [other instructions regarding waiver/estoppel]." Richards is essentially setting forth all the evidence she believes supported a contrary verdict.

Richards does not suggest how the court should have changed the wording of CACI No. 302. Instead, she maintains the verdict must be reversed because the court and the jury somehow acted improperly. Because Richards failed to offer any further analysis on the issue, we have no reason to question the court's decision not to modify

22

CACI No. 302. Indeed, we conclude the instruction, as written, accurately described the essential factual elements to contract formation. The court was under no obligation to advocate for Richards's theory of the case or convince the jury the Agreement was not "clear enough so that the parties could understand what each was required to do." (CACI No. 302.)

In a related argument, Richards connects CACI No. 302 with instructions and special verdict questions regarding waiver and estoppel. She contends errors regarding CACI No. 302 were compounded by the jury's failure "to properly apply jury instruction wavier No. 2 [s]pecial [a]ffirmative [d]efense [w]aiver/[e]stoppel . . . and the [c]ourt fail[ure] to give the [v]erdict [f]orm to the jury on [w]aiver and [s]pecial [v]erdict [f]orm No. 7 [w]aiver." Once again, she proposes the outcome would have been different if the jury and court had acted properly.

The record reflects the court rejected Richards's proposed instruction and the special verdict form she wrote asking the jury to answer whether Zech "waived his right to enforce the contract by waiting a year to enforce it." Richards does not explain the basis for the court's rulings. She does not advocate for, or point to, legal authority supporting the wording she used in creating these documents. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785 [appellant must provide reasoned legal argument].) The record reveals the court did give an instruction on waiver, which stated Richards's theory she did not have to pay her attorney bill because Zech gave up his right to have her "perform this obligation." Richards does not explain why this instruction was lacking or insufficient. We deem the matter waived. (*Ibid.*)

ii. *CACI No. 306 Unformalized Agreement*

CACI No. 306 provides as follows: "[Name of defendant] contends that the parties did not enter into a contract because they had not signed a final written agreement. To prove that a contract was created, [name of plaintiff] must prove both of the following:

23

"1. That the parties understood and agreed to the terms of the agreement; and

"2. That the parties agreed to be bound before a written agreement was completed and signed."

This instruction is generally used in cases where the parties intended to reduce their agreement into signed contract, but the alleged breach occurred before it was written and signed. (See *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.) This instruction is inapplicable here because it was undisputed the parties signed a final written agreement. We found no case authority, and Richards cites to none, to support her contention this instruction is required because there was evidence she did not understand the terms of the agreement and Zech knew she could not afford to pay attorney fees. The contention lacks merit.

iii. *CACI No. 312 Substantial Performance*

CACI No. 312 provides: "[Name of defendant] contends that [name of plaintiff] did not perform all of the things that [name of plaintiff] was required to do under the contract, and therefore [name of defendant] did not have to perform [his/her/nonbinary pronoun/its] obligations under the contract. To overcome this contention, [name of plaintiff] must prove both of the following:

"1. That [name of plaintiff] made a good faith effort to comply with the contract; and

"2. That [name of defendant] received essentially what the contract called for because [name of plaintiff]'s failures, if any, were so trivial or unimportant that they could have been easily fixed or paid for."

Richards asserts the court erroneously failed to give the jury this instruction despite the evidence supporting it. She does not provide sufficient record references when discussing the evidence. Zech counters that the instruction was properly omitted

24

because it was redundant. He cited to a section of the reporter's transcript where the trial court told Richards it gave all applicable instructions regarding breach of contract.

Both parties are incorrect. We reviewed the clerk's transcript and it shows the court gave CACI No. 312. Although it was not labeled CACI No. 312, the jury received the full contents of this instruction. We need not say more.

iv. *CACI No. 314 Interpretation—Disputed Words*

This instruction should be given when there is conflicting evidence as to what the parties intended the language of their contract to mean. Contract interpretation is usually a question of law for the court, but it is a question of fact for the jury if determining the intent of the parties depends on the credibility of extrinsic evidence. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.) The first section of the instruction provides: "[Name of plaintiff] and [name of defendant] dispute the meaning of the following words in their contract: [insert disputed language]." (CACI No. 314.) The second section tells the jury exactly what each party "claims that the words mean" at the time the contract was created. (*Ibid.*)

Richards maintains the parties disputed the meaning of the phrase "30-day billing" in the Agreement. Richards claims she understood the phrase to mean she did not have to pay within 30 days of billing because she signed a lien instead (and she had no money). She concludes that if the court had given CACI No. 314, the jury would have realized she could not have breached an agreement she was not required to perform. This is nonsense. The phrase "30-day billing" was not a disputed term. Zech agreed with Richards that she was not required to make periodic payments. Zech admitted he accepted the lien in lieu of payments when he was her attorney.

Contrary to Richards's belief, the Agreement's terms related to the lien did not preclude Zech from later seeking full payment. As mentioned earlier, paragraph H of the Agreement provided that if Zech withdrew as counsel the "[c]lient agrees to

25

immediately pay [a]ttorney any outstanding balance due." Because the parties do not dispute the meaning of paragraph H, the court was not required to instruct on CACI No. 314.

v. *CACI No. 315  Interpretation—Meaning of Ordinary Words*

This instruction is typically given with CACI No. 314, to assist the jury in resolving a dispute about certain words in the parties' contract. It provides, "You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning." (CACI No. 315.) Based on her previous argument, we anticipated Richards would again maintain the parties dispute the meaning of the phrase "30-day billing." However, she apparently changed her mind and now contends the disputed word is "lien."

Richards understood "lien" to mean she did not have to pay attorney fees until later. She claims Zech thought the word meant he was going to be paid every 30 days. We found no support for this argument. Zech did not ask or require Richards to make periodic payments when he was working as her attorney, nor does he dispute the meaning of the term "lien." Absent a dispute about terminology, the court was not required to instruct on CACI No. 315.

vi. *CACI Nos. 317, 318, 319, & 320 Regarding Contract Interpretation*

Richards acknowledges the jury received the following instructions regarding contract interpretation: (1) CACI No. 317 [construction of contract as a whole]; (2) CACI No. 318 [construction by conduct]; (3) CACI No. 319 [reasonable time]; and (4) CACI No. 320 [construction against drafter]. Richards does not assert these instructions were improperly given or contained misleading information. Instead, she assumes the "jury failed to implement [the] instruction[s] properly" because the jury ruled against her. Although she includes this argument with her other jury instruction

26

challenges, we construe it as a convoluted challenge to the sufficiency of the evidence supporting the jury's verdict.

To overturn the jury's findings, Richards had a high burden of proof. But rather than go through the effort of summarizing the favorable and unfavorable evidence, Richards's argument consists of a few bold sentences blaming the verdict on the jury's failure to follow the jury instructions. For example, she asserts the jury did not follow CACI No. 317 because there was some favorable evidence supporting a ruling in her favor. Specifically, she argues there was obviously no breach of contract because Zech told her that she was not required to pay the fees. Similarly, with respect to CACI No. 318, Richards proclaims it should have been clear to the jury that her decision not to pay Zech "one penny during the entire year of representation shows that she was not required to pay and if she was required to pay, Zech waived his right to collect by failing to timely collect." Interestingly, this argument contradicts her earlier claim Zech agreed to a lien instead of periodic payments.

In any event, we conclude Richards's arguments relating to these four contract formation instructions are in fact repurposed sufficiency of the evidence challenges. By focusing solely on favorable evidence, Richards has forfeited the matter. "Appellants' 'fundamental obligation to this court, and a prerequisite to our consideration of their challenge' [citation], is to 'set forth the version of events *most favorable to* [*respondent*]' [citation]. 'Accordingly, if, as defendants here contend, "some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed to be waived."' [Citation.]" (*Pope, supra,* 229 Cal.App.4th at p. 1246.)

vii.  *CACI No. 355*

Richards admits the court instructed, "To recover damages for the breach of a contract to pay money, [name of plaintiff] must prove the amount due under the contract." (CACI No. 355) She argues the court "did not properly instruct the jury," and

27

the jury did not "properly apply the instruction to this case" because Zech failed to prove the amount due for his services. As discussed in the previous section, this argument fails to address the nature of the instructional error. Rather, by arguing the jury failed to act properly Richards is challenging the jury's consideration of the evidence supporting the verdict i.e., a sufficiency of the evidence argument. The argument fails because Richards failed to set forth "'"*all* the material evidence on the point and *not merely [her] own evidence*."'" (*Pope, supra,* 229 Cal.App.4th at p. 1246 [error deemed waived if appellant fails to discuss material unfavorable evidence].)

viii. *CACI No. 321 Existence of Condition Precedent Disputed*

This instruction should only be given if both the existence and occurrence of condition precedent are contested. Richards suggests that a condition precedent was Zech's obligation to seek fees from her ex-husband pursuant to Family Code section 2030. Alternatively, she maintains there was a condition precedent for Zech to wait until her dissolution case ended before seeking payment. Zech argues this instruction is simply inapplicable. We agree. The Agreement did not mention code provisions or require Zech to wait until a different lawsuit was completed. This argument appears to be related to Richards's misunderstanding about the status of her attorney fee motion in the dissolution action, and Zech's ability to recover fees directly from her ex-husband, who did not sign the Agreement. An argument we have already considered and rejected.

A party is only entitled to instructions supported by substantial evidence. In arguing there was sufficient evidence of a condition precedent, Richards provides one record citation. It is to a jury instruction, not evidence. The rest of her argument consists of legal conclusions and self-serving recitations of facts (without record citations). "[A] brief must contain "'meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"' and contain adequate record citations, or else we will deem all points 'to be forfeited as unsupported by

28

"adequate factual or legal analysis."'  [Citation.]"  (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942-943 (*Fernandes*); see also Cal. Rules of Court, rule 8.204(a)(1)(B).)  Richards forfeited this issue.

ix.  *CACI No. 323 Waiver of Condition Precedent*

This instruction is required only if a court gives CACI Nos. 321 or 322. Absent evidence of a condition precedent, an argument regarding waiver would be inapplicable in the case.  As with her prior arguments, Richards does not provide any record references to support giving this instruction.  She forfeited the issue.  (*Fernandes, supra,* 16 Cal.App.5th at pp. 942-943.)

x.  *CACI No. 358 Mitigation of Damages*

Richards maintains the court was required to instruct on mitigating damages based on her legal theory Zech should have collected his fees from Richards's ex-husband in the family law court.  As stated earlier in this opinion, this argument is premised on a serious misunderstanding of the applicable law.  Zech was not legally required to mitigate his damages by asking a third party to pay what Richards owed him. The court did not err in refusing to give this legally inapplicable instruction.

xi.  *CACI Nos. 405, 411, 413, & 418 Negligence Instructions*

Richards complains the court improperly refused to give the jury four jury instructions used for negligence claims.  Specifically, she contends the jury would have reduced Zech's fees if it had considered his fault in failing to obtain his fees in the family law court from Richards's ex-husband.  (CACI No. 405 [comparative fault of plaintiff].) She maintains the jury would have better understood her testimony about Zech's lack of care in providing legal services during the dissolution action if the court had instructed them with CACI No. 411, regarding a person's right to expect "every other person will use reasonable care."  Richards believes the jury should have been asked to consider the "customs and practices of an attorney in the same circumstances" as Zech because the comparison would highlight Zech's purported deficiencies.  (CACI No. 413 [custom or

29

practice].) Finally, Richards argues it was necessary to instruct on the presumption of negligence per se because Zech violated the law. (CACI No. 418.) She explains, Zech's retainer agreement violated Business and Professions Code section 418 because she did not receive a copy of it. These instructions were not designed for breach of contract cases, and would confuse the jury. The court gave instructions related to Richards's affirmative defense of professional negligence. Richards does not explain why this instruction was inadequate. We find no error.

xii. *CACI No. 601 Damages for Negligent Handling of Legal Matter*

CACI No. 601 provides the following instruction: "To recover damages from [name of defendant], [name of plaintiff] must prove that [he/she/nonbinary pronoun/it] would have obtained a better result if [name of defendant] had acted as a reasonably careful attorney. [Name of plaintiff] was not harmed by [name of defendant]'s conduct if the same harm would have occurred anyway without that conduct." Because Richards did not file a cross-complaint she cannot assert a claim for damages against Zech. The court properly excluded this inapplicable instruction.

xiii. *CACI No. 1900 Intentional Misrepresentation*

Richards asserts Zech "intentionally misrepresented the facts" and deceived her into entering into her marriage settlement agreement. We gather this assertion relates to her malpractice affirmative defense, on which the court gave appropriate instructions. CACI No. 1900 is usually given in a fraud case where *the defendant* made an intentional misrepresentation. In this case, the defendant is Richards. She provides no case authority to support her argument this instruction on fraud belongs in a breach of contract case. We find no error.

xiv. *Miscellaneous Instructions, Verdict Forms & Requests for Judicial Notice*

Richards concludes the instructional error section of her brief by asserting that in addition to the jury instructions already mentioned the court "failed to provide the jury with numerous other requested instructions as seen in Vol. 1 pages Vol. 4 p. 915 to

30

1112, requested verdict forms that go with those instructions and request for judicial notice . . . ." She asserts that if the court had given the jury all the instructions she requested "the outcome would have been entirely different" and, therefore, the errors were prejudicial. Due to the lack of legal argument or relevant authority we deem the matter waived. "'One cannot simply say the court erred, and leave it up to the appellate court to figure out why. [Citations.]'" (*Jewish Community Centers Development Corp. v. County of Los Angeles* (2016) 243 Cal.App.4th 700, 716.) "It is not our responsibility to develop an appellant's argument. [Citation.]" (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.)

VII. *Motion In Limine*

The court granted Zech's motion in limine to exclude evidence of any outside litigation alleging legal malpractice against him. Richards argues this error amounted to a denial of her due process rights, depriving her of a fair trial. We find no error.

Other than stating the motion was denied, neither party provided this court with context about the scope of the motion or the basis for the court's ruling. This background information is important because, "[l]ike many evidentiary rulings, orders on motions in limine are generally reviewed for abuse of discretion. [Citation.]" (*McMillin Companies, LLC v. American Safety Indemnity Co*. (2015) 233 Cal.App.4th 518, 529.) The exception to this general rule is "[w]hen all evidence on a particular claim is excluded based on a motion in limine" in which case "the ruling is subject to independent review as though the trial court had granted a motion for judgment on the pleadings or, if evidence was offered, a motion for nonsuit. [Citations.]" (*Dillingham-Ray Wilson v. City of Los Angeles* (2010) 182 Cal.App.4th 1396, 1402 (*Dillingham*).)

Consequently, we must review the procedural background to determine the appropriate standard of review. The record shows Richards opposed the motion, claiming the evidence was relevant to her malpractice affirmative defense. It was her

31

theory Zech inappropriately advised her to sign the marital stipulation agreement because he felt pressured to quickly finish the case, collect his fees, and pay an outstanding malpractice judgment against him. In the motion, Richards asserted she wanted to call three witnesses involved in malpractice actions because *she* "want[ed] to know . . . how much money each of the lawsuits settled for and whether [Zech's] insurance company paid the settlement or if . . . Zech had to pay the bill." In addition, Richards believed the evidence would show Zech's poor character due to his "past performance of overbilling and to show" she was not the only person who was misled by Zech's claim to be an experienced trial attorney.

At the hearing, Richards again asserted the evidence was relevant because Zech's misconduct in her case was motivated by his need for her money to pay his own legal settlements in malpractice cases. She asked the court to allow testimony from at least one "victim" (Witness). Richards explained Witness sued Zech for malpractice and obtained a settlement within the same time frame Zech was representing Richards in the dissolution action.

Zech argued the evidence was highly prejudicial because there was no evidence connecting the two cases or showing one had any impact on the other. He stated, "If she were to have followed my advice, she wouldn't have [signed the marital stipulated judgment]." The court agreed with Zech's assertion that Richards improperly planned to infer negligence based on the settlement amount paid in the other malpractice cases. The court explained, "[I]t would be equally implausible and incorrect for the [c]ourt to let . . . Zech bring in examples showing that maybe at that time, he had no other cases that were diverting his attention, he was doing nothing else at the time, or he had six clients that would love to testify about how well he handled their divorces. That's just not this case, nor is [Witness's] case this lawsuit. And the fact that he was handling [Witness's] case at the same time he was handling your case is irrelevant, really."

32

As mentioned, our standard of review depends on whether the in limine ruling precluded the entire claim or merely limited the evidence to be offered to prove a claim. (*Dillingham, supra,* 182 Cal.App.4th at p. 1402.) Neither party discussed the applicable standard of review. For reasons set forth below, we conclude the ruling did not preclude the entire claim and the abuse of discretion standard applied, but Richards failed to argue why the court abused its discretion.

Richards's argument presumes we will apply a de novo standard of review. In her opening brief, Richards makes generalized complaints about how the ruling violated her due process rights. She lists all the favorable evidence supporting her affirmative defense, and proclaims the jury would have found in her favor if it had considered the excluded evidence. However, by acknowledging and citing to other evidence supporting a finding of professional negligence, Richards unwittingly established the standard of review is abuse of discretion. The ruling did not preclude the entire claim.

Moreover, after carefully reading her argument, we noticed Richards firmly believes the excluded evidence would demonstrate Zech's motivation for committing malpractice, i.e., why he influenced her to accept unfavorable terms instead of going to trial. Citing to Evidence Code section 1101, Richards notes the evidence established Zech's *intent* in committing malpractice. Clearly Richards feels it was important to establish Zech committed malpractice *intentionally.* However, intent is not one of the required elements for legal malpractice, a type of *negligence* claim to which general negligence principles apply. "'In civil malpractice cases, the elements of a cause of action for professional negligence are: "(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage. [Citations.]" [Citation.]' [Citations.]" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 356-357.) Indeed, the court in this case

33

instructed the jury as follows: "An Attorney is negligent if he fails to use the skill and care that a reasonably careful Attorney would have used in similar circumstances. This level of skill, knowledge, and care is sometimes referred to as 'the standard of care'"

In summary, the court's ruling did not preclude Richards from presenting evidence on the standard of care and other factors necessary to establish professional negligence. We deem the issue waived because Richards failed to present legal analysis or provide relevant case authority addressing this issue. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785 [appellant must provide reasoned legal argument].)

## DISPOSITION

We affirm the judgment. We grant appellant's request for judicial notice of exhibit No. 3 and deny the request with respect to the other exhibits. Respondent shall recover his costs on appeal.

O'LEARY, P. J.

WE CONCUR:

GOETHALS, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

34